UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

RICHARD L. ANTHONY, CALVIN L.          )
MOONINGHAM, and JOHN L. WAGNER,        )
                                       )
Plaintiffs,                            )
                                       )
v.                                     )          No.: 1:12-cv-303
                                       )          *Collier/Lee*
BRADLEY COUNTY JUSTICE CENTER,         )
TONY MOORE, Jail Adm'r, and BRADLEY    )
COUNTY SHERIFF JIM RUTH,               )
                                       )
Defendants.                            )

## MEMORANDUM and ORDER

This *pro se* civil rights complaint under 42 U.S.C. § 1983 was filed by Plaintiffs Richard

L. Anthony ("Anthony"), Calvin L. Mooningham ("Mooningham"), and John L. Wagner

("Wagner"), three federal pretrial detainees in the Bradley County jail. Because the Plaintiffs are

inmates, each is **ASSESSED** his *pro rata* share (i.e., one-third) of the civil filing fee of $350.00.

## I.      Fee Assessment Procedures

Pursuant to 28 U.S.C. § 1915(b)(1)(A) and (B), the custodian of Mooningham's inmate

trust account at the institution where he resides is directed to submit to the <u>Clerk, U.S. District

Court, 900 Georgia Avenue, Room 309, Chattanooga, Tennessee 37402,</u> as an initial partial

payment, whichever is greater of:

(a)      twenty percent (20%) of the average monthly deposits to his inmate trust account;

or

(b) twenty percent (20%) of the average monthly balance in hiss inmate trust account for the six-month period preceding the filing of the complaint. Thereafter, the custodian shall submit twenty percent (20%) of Mooningham's preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until his pro rata share of one-third of the full filing fee of three hundred fifty dollars ($350.00), as authorized under 28 U.S.C. § 1914(a), has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

Likewise, the custodians of Anthony's and Wagner's inmate trust accounts at the institution where each now resides is directed to submit to the <u>Clerk, U.S. District Court, 900 Georgia Avenue, Room 309, Chattanooga, Tennessee 37402,</u> twenty percent (20%) of each Plaintiff's preceding monthly income (or income credited to each Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until each Plaintiff's one-third share of the full filing fee of three hundred fifty dollars ($350.00) has been paid to the Clerk.[1]   28 U.S.C. § 1915(b)(2).

## II.    Screening

Under the Prison Litigation Reform Act (PLRA), district courts must screen prisoner complaints and *sua sponte* dismiss those that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune.  *See, e.g., Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999).

> Responding to a perceived deluge of frivolous lawsuits, and, in particular, frivolous prisoner suits, Congress directed the federal courts to review or "screen" certain complaints sua sponte and to dismiss those that failed to

---

[1]   Anthony and Wagner have zero ("0") balances in their prisoner trust accounts. An initial partial filing fee is not required when a prisoner possesses no funds in his trust account, though he "is still obligated to pay the full filing fee when money does become available*." McGore v. Wrigglesworth*, 114 F.3d 601, 601 (6th Cir. 1997), *overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944 (6th Cir. 2013).

state a claim upon which relief could be granted, that sought monetary relief from a defendant immune from such relief, or that were frivolous or malicious.

*Id*. at 1015-16 (6th Cir. 1999) (citing 28 U.S.C. §§ 1915(e)(2) and 1915A).

In screening complaints, the Court bears in mind the rule that *pro se* pleadings filed in civil rights cases must be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Still, the complaint must be sufficient "to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which simply means the factual content pled by a plaintiff must permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The Court examines the complaint in light of those requirements.

## III.     Review of the Complaint

### A. Suable Defendants

At the outset, the Bradley County Justice Center, the first named Defendant, is a building and not a suable entity under § 1983. *See Monell v. Department of Social Services*, 436 U.S. 658, 688-90 & n.55 (1978) (for purposes of a § 1983 action, a "person" includes individuals and "bodies politic and corporate"); *Marbry v. Correctional Medical Services*, 2000 WL 1720959, *2 (6th Cir. Nov. 6, 2000) ("[T]he Shelby County Jail is not an entity subject to suit under § 1983.") (citing *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991)); *Cage v. Kent County Corr. Facility*, 1997 WL 225647, *1 (6th Cir. May 1, 1997) (("The district court also properly found that the jail facility named as a defendant was not an entity subject to suit under § 1983."). Thus, any allegations asserted against the Bradley County Justice Center fail to state a claim for relief and this Defendant is **DISMISSED** from this lawsuit.

## B. The Plaintiffs' Allegations

Screening the rest of the allegations in the complaint has been made more difficult by the disorganized way in which the pleading was drafted. Allegations made in connection with one claim drift over into allegations offered in different claims. Reiterations of prior contentions and claims are commonplace. Needless to say, Plaintiffs have not "stated simply, concisely, and directly events that, they alleged, entitled them to damages from the [defendants]," as they are required to do to make out a plausible constitutional claim. *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346-47 (2014) (per curiam) (citing *Twombly* and *Iqbal*). Rather than allowing Plaintiffs to amend the complaint and replead their claims, *see LaFountain v. Harry*, 716 F.3d 944 (6th Cir. 2013), the Court has spent a great deal of time unscrambling the arguments of each Plaintiff and matching those arguments that particular Plaintiff's claims. For the sake of organization, the Court has renumbered the claims and grouped related claims together.

    **1. Food Claims** (Court File No. 2, Compl. at pp. 3-4, 6 & 8, Claims 1, 2[part], 4, 7, & 8).

Plaintiff Anthony alleges he filed a grievance on August 15, 2012, complaining about the skimpy offerings for breakfast, which consists of small portions of low calorie food, such as potatoes, grits, or oatmeal with no sugar. Anthony maintains he is hungry due to the low "food content" of the meals, has lost weight, and stays sick at his stomach from the lack of food.

Anthony acknowledges "they" give inmates a fairly good lunch, but objects to the sack dinner, which contains two sandwiches, in which are layered two thin slices of salami or ham; a cookie; and one fruit, served every night, seven days a week. Furthermore, the sack dinner contains sandwich makings, rather than sandwiches. Plaintiffs are not furnished with a dinner tray but, instead, must use an unsanitary table as a staging area in which to assemble their sandwiches.

The timing of the meals is undesirable because breakfast is served at 6:00 a.m. to 6:30 a.m. and lunch at 10:30 a.m., forcing inmates to go twenty hours without food, with only the sack dinner for nourishment.

Anthony spoke with Sgt. Roe about the food and she told him the federal authorities had approved the food which is served, the times it is served, and, if he did not like the sandwiches, she would eliminate them altogether and only serve two meals a day. She also stated the food and food service would not change and recommended Anthony buy additional food items at the commissary. Anthony maintains he cannot order commissary items because he receives indigent packages.

During another conversation with Sgt. Roe, when Anthony complained about the lack of trays, she explained the rationale behind "no-tray" policy was to save on the cost of labor and the water used to wash trays and suggested he adjust to the policy by tearing the bag apart and laying his food on the inside of the torn bag. Sgt. Ray again threatened to cut back meal service to two meals a day, if Anthony continued to argue about the matter. Anthony retorted: "I don't care."

It later was revealed by an officer the reason for the small portions of food was that the person who in charge of the kitchen, who ordered the food, and who made the meals got a bonus, based on how much the individual saved on food costs. For example, as explained by the officer, if six bags of tea serve 400 people, to save tea bags, only four tea bags would be used and, if the food, which is estimated to feed a certain number of people, runs low at serving time, the portions are cut in half to avoid making more food.

Plaintiff Mooningham, according to Anthony, is subject to the same treatment. Mooningham has stomach problems and the manner in which he is fed hurts his stomach, but "[t]hey told him there was nothing [sic] could be done of [sic] this treatment."

5

John Leslie Wagner, according to Anthony, has lost fifteen pounds.[2]

### 2. Access to the Courts Claims (*Id.*, pp. 5-6, Claims 2 [part] & 3[part])

It is alleged by Anthony that Mooningham has filed a grievance about a law library, but no one will assist either of them with their federal cases. In formal complaints which have been filed, Bradley County officials were told Plaintiffs cannot work on their cases because there is no law library. Moreover, Plaintiffs are locked in their cells and cannot use the phone. Plaintiff Anthony is in "the middle of very important things, and need(s) constant contact with [his] attorney by phone" (*Id.* at 5). Though Plaintiffs are supposed to be allowed to be out of their cells at 2:00 p.m., routinely it is 5:30 p.m. before their cell door is unlocked and they are free to leave the cell. Everyone knows all businesses are closed and lawyers have gone home by this time.[3]

### 3. Medical Claims (*Id.*, pp. 5, & 9-11, Claims 2 [part], 10, 11, & 15)

The Bradley County authorities, it is contended, will not secure the medical attention which is needed by Anthony and Mooningham. Mooningham has a very bad hernia that is protruding from his stomach; is suffering from stage 3 Hepatitis C; and his liver and body are swollen to double their normal sizes. Medications which Mooningham has been given make him swell even more. After filling out three sick call requests complaining about his medical problems, Mooningham phoned his counsel at the Federal Public Defender's office. Apparently prompted by the call, a medical staff member drew a sample of Mooningham's blood and gave

---

[2] The complaint contains the following notice as to the specific claims being alleged by Plaintiff Wagner: "John Leslie Wagner has a medical lawsuit going on of his own, seperate (sic) from this one. Mr. Wagner is not in anyway connected to the medical part of this suit, only the part on the food," (Court File No. 2, Compl., p. 11). The Court accepts this disclaimer; understands that the only claim being asserted by Plaintiff Wagner is the food claim; disregards scattered references to Plaintiff Wagner with respect to other claims; and addresses only his food claim.

[3] There are other allegations concerning telephone usage, but this particular allegation has been framed as a denial of Plaintiffs' right to court access.

6

him an injection, which was intended to cause him to urinate and, thereby, drain fluid which had collected around his stomach.

However, the medication did not work as it was intended to work. Instead, it caused Mooningham to have diarrhea. On August 28, 2012, Mooningham weighed 198 pounds but, by the next day, his weight had increased to 210 pounds. As Anthony sees it, the inadequate medical attention given to Mooningham makes it appear the medical staff "just wants to see him be miserable and hurt," (Court File No. 2, Compl., p. 11).

Plaintiff Anthony has a bad shoulder which has been broken and is experiencing a problem with a disc in his back. Both of these conditions need medical treatment. Yet, "they" have told him there is nothing they can do or nothing they will do. In addition, Anthony's gums are bleeding so badly he ingests blood along with his food.

In 2010, while incarcerated in another jail, Anthony sustained a broken collar bone and an injury to a disc in his back. In August 2012, Anthony slipped on a hallway floor which had been mopped recently and was slick. No sign had been placed in the area to warn inmates about the wet floor, though a rule instructed inmates to walk on the right side of the hallway, with their shoulders against the wall. (The implication from the latter contention is that the right side of the hallway floor was slick but inmates were compelled by the rule to walk on the slick side.) After the accident, an officer asked Anthony if he was okay and he responded he did not know yet because he had been badly jolted. Anthony was taken to the medical clinic, given Ibuprophen, and sent back to his cell.

Anthony's sleep that night was interrupted by pain. The next morning an officer called the medical clinic on his behalf, but was told by a medical staff member the clinic was busy and could not see him. Plaintiff did not see a doctor and did not receive an X-ray on the day

7

following his fall.  There is no doctor provided to treat inmates, only a nurse practitioner.   As a result of his accident, Plaintiff suffers numbness, which descends from his right hip to the big toe on his right foot; is severely limited in moving his neck; and fears he has damaged a nerve.

In the final claim in this category, Plaintiffs allege they are being discriminated against because of their medical conditions. Anthony has Hepatitis C.  Mooningham was informed by the doctor his white blood cells were elevated and then was asked the date of his most recent HIV test.  Later that morning, an officer brought razors by their cell but told Mooningham he could shave only if he moved from the cell he shared with Plaintiff Anthony to a different cell.

### 4. **Recreation** (*Id*. p. 6, Claim 3[part])

Anthony and Mooningham purportedly are locked in their cell with no opportunity to participate in recreational activities.

### 5. **Sewer Back-up/ Hygiene** (*Id*., pp. 6, 8, & 11, Claims 5-6, 9[part], & 11[part])

Waste from other cells backs up into the toilet daily in the cell Anthony shares with Mooningham.  The odor permeates the cell, in which they must eat their meals without a table. They have been told this problem stems from a lack of exhaust pipes, but Bradley County officials say there is nothing they can do and advise them to tolerate it or flush the accumulated waste back down the toilet. Anthony has been informed by several officers it would cost a fortune to install the necessary pipes into the sewer system to avoid it.  On three days, the problem was exacerbated when Plaintiffs were let out of the cell from only from 9:00 a.m. to 11:45 a.m. and were forced to return to their cell where they had to endure the stench the remainder of the day.

As a consequence of having diarrhea, Mooningham used the toilet paper on hand and asked for more.  In response to Mooningham's request, he was given only a small amount of

toilet paper and told to do the best he could with the toilet paper which he was dispensed. When that toilet paper was gone, the jail staff refused to resupply the cell with toilet paper until the next day.

### 6. **Indigent Packages** (*Id*., p. 14, Claim 13)

Plaintiff Anthony orders indigent packages at a cost of five dollars ($5.00) each, which consists of various items, including a toothpaste, soap, shampoo, comb, a toothbrush, deodorant, a pen, laundry detergent, 3 stamped envelopes, and 2-3 sheets of paper. He was shorted on several items in two of his purchases.

### 7. **Wrongful Punishment** (*Id*., p. 14, Claim 14[part])

Plaintiff Mooningham went to a church service, but had to go upstairs to use the bathroom. Mooningham was intercepted on the way back by an officer, who locked him down in his cell until the church program was over. The officer refused to accept Mooningham's explanation that medication he is taking for fluid buildup requires him to go to the bathroom and, after the church program concluded, the entire pod was locked down for the supposed misdeeds of one person. The lock down was slated to end at 2:00 p.m., but it did not end then because Mooningham told the officer he would call his attorney who knew about his client's medical problems. Plaintiff Arnold was drafting this claim at 5:00 p.m. and the lock down was still in force.

### 8. **Limited Telephone Usage** (*Id.*, Claim 14[part])

Inmates are unable to use the telephones during programs or lunch, except for a few minutes before 11:30 a.m. lock down.

IV. **Law & Analysis**

    **A. First Amendment Claims**

### 1. Access to Courts

In this claim, it is maintained Plaintiffs Anthony and Mooningham cannot work on their cases because there is no law library and no one will assist either of them with their federal cases. Furthermore, they are locked in their cells and cannot use the telephone, though Plaintiff Anthony, in particular, needs to be in constant contact with his attorney.

Prisoners have a constitutional right of access to the courts, *Bounds v. Smith*, 430 U.S. 817, 821 (1977), but no abstract, freestanding right to a law library in prison. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). To state a claim for denial of access to the courts, a plaintiff must show prejudice, such as the late filing of a court document or the dismissal of a non-frivolous claim resulting from the inadequate jail law library. *Pilgrim v. Littlefield*, 92 F.3d 414, 415-16 (6th Cir. 1996) (citing *Lewis*, 518 U.S. at 351)). Plaintiffs have failed to allege any actual injury caused by the lack of law library.

Additionally, "a prisoner's constitutionally-guaranteed right of access to the courts has been protected when a state provides that prisoner with either the legal tools necessary to defend himself, e.g., a state-provided law library, or the assistance of legally-trained personnel." *Holt v. Pitts,* 702 F.2d 639-40 (6th Cir. 1983) (citing *Bounds* and *Avery v. Johnson*, 393 U.S. 483 (1969)). Plaintiffs acknowledge they are represented by attorneys. Therefore, "[a]s a matter of law, . . . the state [has] fulfilled its constitutional obligation to provide [them] with full access to the courts," *id*., and the Court finds they have failed to state a valid First Amendment claim entitling them to relief.

### 2. Restricted Telephone Usage

Inmates are unable to use the telephones during programs or lunch, except for a few minutes before 11:30 a.m. lock down.

Though "federal court opinions have previously held that persons incarcerated in penal institutions retain their First Amendment rights to communicate with family and friends,. . . [n]evertheless, an inmate has no right to unlimited telephone use." *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994*), accord United States v. Footman*, 215 F.3d 145, 155 (1st Cir. 2000) (observing "[p]risoners have no per se constitutional right to use a telephone"). Even if Plaintiffs had an absolute constitutional right to use a telephone, reasonable restrictions for legitimate penological interests could be imposed on any such a right. *Turner v. Safley*, 482 U.S. 78, 89 (1987) (holding prison regulations which invade an inmate's constitutional rights are valid so long as they are "reasonably related to legitimate penological interests"); *Jones v. North Carolina Prisoners' Labor Union, Inc*., 433 U.S. 119, 125 (1977) (noting the fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment).

Nothing is more reasonably related to the security of a correctional facility than maintaining control of a prisoner's whereabouts to ensure he is where he is supposed to be within the facility, is not disrupting the order of the facility, and is not escaping from the facility. *See Bell v. Wolfish*, 441 U.S. 520, 546 (1979) (noting "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees"); *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir.1986) (telephone access is subject to reasonable restrictions for security interests).

According to the Supreme Court, running a prison is an extraordinarily difficult endeavor which is "peculiarly within the province of the legislative and executive branches of government;" one for which the courts are ill suited; and one to which, ordinarily, courts will

defer to prison officials' "expert judgment." *Turner*, 482 U.S.at 84–86. The decision to restrict plaintiffs' phone privileges during programs and lunch and to allow few minutes of phone usage before 11:30 a.m. is one of those to which this Court will defer. *See Perez v. Federal Bureau of Prisons,* 229 F. App'x 55, 58 n.3, 2007 WL 1093322, * 2 n. 3 (3rd Cir. 2007) (noting "the telephone limitation apparently does not affect [plaintiff's] ability to communicate with people outside the prison through letter writing and visitation").

Because the Constitution does not secure to Plaintiffs unrestricted telephone usage and because the complained of limitations on phone usage are reasonable, given the security interests of a correctional facility, Plaintiffs have failed to state a constitutional claim.

## B. Eighth Amendment Claims

Punishment can be extended beyond that which is part of a sentence and can include the conditions under which an inmate is confined; thus conditions of confinement which amount to an "unnecessary and wanton infliction of pain" violate the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).[4] To show the behavior complained of amounted to an unnecessary and wanton infliction of pain, a plaintiff must show: (1) the alleged deprivation is, objectively, sufficiently serious and (2) the prison official who caused the deprivation had a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

A prison condition will be sufficiently serious if it denies a plaintiff "the minimal civilized measure of life's necessities," such as "essential food, medical care or sanitation," *Rhodes v. Chapman*, 452 U.S. 347-48 (1981*); Tillery v. Owens*, 907 F.2d 418, (3rd Cir. 1990) ("Although prisoners are, undeniably, sent to prison as punishment, the prison environment

---

[4] The Eighth Amendment serves as primary source of protection for a convicted prisoner, *Bell*, 441 U.S. 536-37 n.16, whereas a pretrial detainee is entitled to same protections under the Due Process Clauses of the Fifth and Fourteenth Amendments. *Id*. at 535. Thus, the analysis which applies to Eighth Amendment claims applies here as well. *Whitley v. Albers*, 475 U.S.312, 327 (1986); *City of Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985).

itself may not be so brutal or unhealthy as to be itself a punishment"), or hygiene. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (finding a prisoner may not be denied his basic needs, including hygiene). By the same token prison officials who are deliberately indifferent to the serious medical needs of prisoners violate the Eighth Amendment. *Id*. at 104.

A sufficiently culpable state of mind—one of deliberate indifference—may be evinced by showing a correctional official knows of, but disregards, an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837 and 842. The Court infers, from Plaintiffs' contentions, they are alleging four claims under the Eighth Amendment, via the Due Process Clause of the Fifth Amendment.

### 1. Food Claims

Though inmates are entitled to a proper diet, *see Hutto v. Finney*, 437 U.S. 678, 683 (1978) (prisoners require more than a 1000-calorie diet of a 4-inch square of grue—a substance created by mashing meat, potatoes, oleo, syrup, vegetables, eggs, and seasoning into a paste and baking it in a pan), sufficient to maintain normal health, *Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir.1977), the complaint contains nothing to satisfy the state of mind requirement in an Eighth Amendment claim. To establish deliberate indifference, Plaintiffs must plausibly allege Defendants were aware of facts from which they could infer Plaintiffs faced a substantial risk of harm and that Defendants actually drew the inference. *Farmer*, 511 U.S. at 837.

Plaintiffs have failed to do so and, as a consequence, have not stated a claim of unconstitutional living conditions with respect to their contentions about food.

### 2. Medical Claims

Prison doctors and officials may be deliberately indifferent to a prisoner's serious medical needs in the way they respectively "respon[d] to a prisoner's needs" or by "interfer[ing] with

treatment once prescribed." *Estelle*, 429 U.S. at 104-05. To state a constitutional claim for the denial of medical attention, a plaintiff is required to plausibly show a defendant possessed the state of mind of deliberate indifference. *Id.*at 104 (finding deliberate indifference to an inmate's serious medical needs violates the Constitution). As noted in the above discussion, Plaintiffs need to demonstrate Defendants were aware of facts from which they could infer Plaintiffs faced a substantial risk of harm if their serious medical needs went unmet and then show Defendants actually drew such an inference. *Farmer*, 511 U.S. at 837.

Plaintiffs submit no contentions to show these Defendants knew facts from which they could infer that Plaintiffs had serious medical needs or that Defendants drew the requisite inference. Therefore, there are no assertions to support the deliberate indifference prong of a constitutional medical mistreatment claim.

In addition, it is well recognized contentions of mere negligence will not entitle a plaintiff to relief under 42 U.S.C. § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986). The same thing is true of medical negligence. *Estelle*, at 106 (1976) ( observing "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment"). Where a prisoner receives some medical care and the dispute is over its adequacy, no constitutional claim has been stated. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). By the same token, no viable Eighth Amendment claim is stated by allegations that a medical condition has been negligently diagnosed or treated, and the mere fact the victim happens to be a prisoner does not convert it into a constitutional violation. *Estelle,* 429 U.S. at 106.

In the present case, Arnold and Mooningham were seen by medical care providers, were given treatment for their medical problems, and received medications to treat their respective

conditions. Even though the medication Mooningham received to dissipate the fluid surrounding his stomach caused an unforeseen side effect (i.e., diarrhea) and even though Arnold's pain was not eradicated by the Ibuprofen he was dispensed, a claim involving the efficacy of medications would fit within the scope of a medical negligence tort and not in a suit for constitutional medical mistreatment.

The Court concludes Plaintiffs have failed to state a viable claim in this regard.

### 3. Denial of Recreation

Plaintiffs allege they are locked in their cell with no recreation. This allegation is not bolstered by any factual underpinnings whatsoever. The person who denied Plaintiffs exercise has not been identified. Nor have Plaintiffs asserted the time-frame during which they were denied exercise.

Absent some elaboration of the facts and circumstances surrounding this purported constitutional deprivation, the allegations are insufficient to establish a viable § 1983 claim. *See Harden-Bey v. Rutter*, 524 F.3d 789, 796 (6th Cir. 2008) ("[I]n the context of a civil rights claim, . . . conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim.") (citing *Lillard v. Shelby County Bd. of Educ.*,76 F.3d 716, 726 (6th Cir. 1987)); *Cline v. Rogers*, 87 F.3d 176, 184 (6th Cir.1996) (instructing courts not to suppose a plaintiff would be able to show facts not alleged or that a defendant has violated the law in ways not alleged). Due to a dearth of allegations of fact to flesh out this claim, Plaintiffs have failed to state a claim entitling them to relief under § 1983.

### 4. Toilet Back-up/ Hygiene

In this category of claims, Plaintiffs maintain that waste from the toilets in other cells backs up into the toilet in their cell. They have been advised to flush the waste back down the

toilet, but even when they do so, the odor from the waste lingers and makes the time Plaintiffs spend in their cell intolerable. It is also maintained Plaintiff Mooningham ran out of toilet paper but was given only a small amount and had to wait until the next day to be resupplied with a roll of toilet paper.

Recall that an Eighth Amendment claim contains two elements: an objective element (i.e., a sufficiently serious deprivation) and a subjective element (i.e., a state of mind of deliberate indifference). When prison conditions are concerned, a sufficiently serious deprivation is one "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original).

Also, the length of time that an inmate is subjected to certain conditions of confinement is relevant in determining whether the confinement meets constitutional standards. *See Hutto*, 437 U.S. at 686-87 ("A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months."). Punishment may ensue where inmates are forced "to endure genuine privations and hardship over an extended period of time." *Bell*, 441 U.S. at 542.

Neither element has been met here. First of all, even in the free world, toilets back up and bad odors which cannot be eliminated must be endured. Secondly, while Plaintiffs claim waste from other toilets collects in the toilet in their cell is an everyday occurrence, they have not specified the length of time to which they have been exposed to the sewer backup. The time which is involved in the deprivation of a roll of toilet paper appears to have been one day. Thus, under the circumstances alleged here, it cannot be said that contemporary standards of decency

are violated when toilets back up or that society will not abide the lingering odor of flushed waste or the lack of a roll of toilet paper for one day.

Moreover, the allegations in the instant claims are not connected to any Defendant. Obviously, there is no way to determine whether the requisite state of mind plausibly has been alleged when no Defendant has been identified as being instrumental in the deprivation. Hence, the objective component of an Eighth Amendment claim likewise is missing.

Here too, Plaintiffs have failed to state an actionable § 1983 claim entitling them to relief and this claim is **DISMISSED**.

### C. Due Process/Equal Protection Claims

#### 1. Indigent Packages

The allegation regarding Plaintiff Anthony's being shorted on items in his indigent package falls within the scope of the Due Process Clause, which protects against the deprivation of property without due process of law. The allegation likewise implicates the rule in *Parratt v. Taylor*. Under the *Parratt* rule, a plaintiff may not maintain an action under § 1983 for a random and unauthorized deprivation of personal property, whether negligent, *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)., or intentional, *Hudson v. Palmer*, 468 U.S. 517 (1984), if there is an adequate post-deprivation state remedy to address the claim and if there is no allegation that the procedures are actually inadequate to afford relief. *Parratt*, 451 U.S. at 543-44.

The statutes governing the Tennessee Claims Commission, *see* Tenn. Code Ann. §§ 9-8-301 *et seq*., provide Plaintiff Anthony with a state remedy for any alleged illegal deprivation of property. No allegation has been made as to the inadequacy of these procedures. Plaintiff, thus, has failed to state a claim which would entitle him to relief under § 1983.

### 2. Wrongful Punishment

The allegation concerning Plaintiff Mooningham's punishment of lock-down, which was imposed for the incident where, without permission, he went upstairs to use the bathroom, is not of constitutional concern. Neither are Arnold's contentions regarding the entire pod being locked down, presumably as a result of Mooningham's seeming infraction of the rules.

This is so because state restraint of a prisoner violates due process only when the action exceeds the sentence in such an unanticipated manner as to implicate the Due Process Clause of its own force or when it imposes an atypical and significant hardship on the prisoner that is not a usual incident of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* at 485. The Due Process Clause of its own force does not require any particular process before an inmate may be punished for prison infractions, *Montanye v. Haymes*, 427 U.S. 236, 242 (1976), and it does not appear either Plaintiff has suffered the requisite hardship.

Put simply, Plaintiffs' confinement in lock-down cannot be "atypical" because the other inmates in the pod shared the same fate. Moreover, the lock-down of the pod cannot be "significant in relation to the ordinary incidents of prison life" because lock-down of inmates is a common consequence for prison rule infractions. These allegations fail to state a due process claim.

### 3. Discriminatory Treatment (Razor Incident)

In this claim, Anthony asserts he has Hepatitis C, Mooningham has an elevated white blood count, and in order to shave with a razor, Mooningham was told he would have to move to

another cell. Plaintiffs maintain these allegations of fact show discrimination based on their respective medical conditions. The Court disagrees.

As stated earlier, unless a plaintiff presents facts which allow a court reasonably to infer a defendant stands "liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a plaintiff has not made out a plausible claim. Plaintiffs have offered nothing to connect the statement about moving Mooningham to another cell to their respective medical conditions and, thus, have failed to make out a plausible constitutional claim.

Furthermore, if the Court treats the allegations as an implied equal protection claim, Plaintiffs must show they were similarly situated to other inmates and also show a discriminatory purpose was a factor in the challenged statement. *See Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265-66 (1997); *see also Gatlin ex rel. Estate of Gatlin v. Green*, 362 F.3d 1089, 1094 (8th Cir. 2004) ("For any equal protection claim, the threshold inquiry is whether the [claimant] is similarly situated to others who allegedly received preferential treatment.") (internal citation marks omitted).

Here, Plaintiffs have not presented any circumstances to show that they are similarly situated to any other prisoners in the jail to whom no such a statement was made. *See Keevan v. Smith*, 100 F.3d 644, 649 (8th Cir. 1996) ("There can be no . . . meaningful comparison for equal protection purposes between two sets of inmates who are not similarly situated."). Nor have they demonstrated a discriminatory purpose underlay the questioned statement. Therefore, Plaintiffs have not stated a claim for violation of their rights to equal protection.

### D. Theory of Liability

No specific allegations of wrongdoing have been made against Defendant Sheriff Jim Ruth or Defendant Jail Administrator Tony Moore. Perhaps, Plaintiffs have named these

officials as Defendants under the theory that they are responsible for safe housing for inmates at the Bedford County jail and for properly managing or supervising the staff and the operations at the jail. However, §1983 liability must be based on more than respondeat superior, or a defendant's right to control employees. *Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 80-81 (6th Cir. 1995).

Though respondeat superior does not provide a valid basis of liability, *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Monell,* 436 U.S. at 691; *Rizzo v. Goode*, 423 U.S. 362 (1976), Plaintiff can still hold these Defendants liable so long as he can demonstrate they implicitly authorized, approved, or knowingly acquiesced in the alleged wrongdoing of any of their subordinates. *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1244 (6th Cir. 1989). But they cannot be held liable for a mere failure to act. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) ("Supervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior.'") (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).

Also, the failure of a prison official to review favorably a grievance provides no basis for section 1983 liability. *See Ramsey v. Martin*, 28 F.App'x 500, *502, 2002 WL 169559, *1 (6th Cir. Jan. 31, 2002); *see also Burks v Raemisch*, 555 F3d. 592, 596 (7th Cir. 2005) ( "[Plaintiff's] view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor . . . and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right.").

As Plaintiffs do not allege Defendants knew of any of the complained of untoward treatment or wrongful living conditions, there is nothing from which to conclude these Defendants condoned any subordinate's failure to act on any risks to Plaintiff's health, safety, or well-being caused by the purported treatment or conditions of confinement. *See e.g., Estate of Rosenberg v. Crandell,* 56 F.3d 35, 37 (8th Cir.1995) ("The general responsibility of a warden for supervising the operation of a prison is not sufficient to establish personal liability.").

V.      **Conclusion**

In light of the above law and analysis, the complaint has not stated any viable constitutional claims and, thus, has not survived the screening process. Accordingly, a judgment will enter dismissing this case for failure to state a claim entitling Plaintiffs to relief under § 1983.

Finally, the Court **CERTIFIES**, for reasons which appear above, any appeal from this decision would not be taken in good faith and would be frivolous. *See* 28 U.S.C. § 1915(a)(3).


**ENTER:**


**/s/**_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**